# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

UNITED STATES OF AMERICA,
        Plaintiff,

Vs.                              CASE NO.: 8: 20-CR-220-WFJ-SPF

ANTONIO DIAZ, JR., ET AL,
        Defendant.
_____/

## SENTENCING MEMORADUM ON BEHALF OF ANTONIO DIAZ

    COMES NOW, the Defendant, ANTONIO DIAZ, by and through the undersigned counsel, pursuant to the Federal Rules of Criminal Procedure and Federal Statues, and files this Sentencing Memorandum requesting a sentence of home detention and probation setting forth all factors that the Court should consider in determining what type and length of sentence is sufficient, but not greater than necessary, to comply with the statutory directives set forth in 18 U.S.C. 3553 (a), and states as follows:

### Sentencing under *Booker*

    In United States v. Booker, 125 S. Ct. 738, 756 (2005), the Supreme Court, reaffirming its holding Apprendi v. New Jersey, 530 U.S. 466 (2000), concluded that the provisions of the Federal Sentencing Reform Act of 1984 were not to be applied as though they were mandatory, essentially making the guidelines advisory. Id. at 757.   Therefore, instead of being bound by the Sentencing Guidelines, the Sentencing Reform Act, as being revised by Booker:

> [R]equires a sentencing court to consider Guidelines ranges, see U.S.C.A. 3553(a)(4)(Supp. 2004), but it permits the court to tailor the sentence in light of other statutory concerns, as well. See 3553(a).

Booker, 125 S. Ct. at 757.

Therefore, under <u>Booker</u>, sentencing Courts must treat the sentencing guidelines as just one of a number of sentencing factors that are otherwise set forth in 18 U.S.C. 3553(a). The primary directive in Section 3553(a) is for sentencing courts to impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph 2 of the section. Section 3553(a)(2) states that such purposes are:

(A) To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(B) To afford adequate deterrence to criminal conduct;
(C) To protect the public from further crimes of the defendant; and
(D) To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

In determining the minimally sufficient sentence, 3553(a) further directs sentencing courts to consider the following factors, inter alia:

1) The nature and circumstances of the offense and the history and characteristics of the defendant; (3553(a)(1));
2) The kinds of sentences available; (3553(a)(3));
3) The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct (3553(a)(6)); and
4) The need to provide restitution to any victims of the offense. ( 3553(a)(7)).

Additionally, other statutory sections also give the district court guidance in sentencing. For example, 18 U.S.C. 3582 provides that the imposition of a term of imprisonment is subject to the following limitation: "in determining whether and to what extent imprisonment is appropriate based on the Section 3553(a) factors, the judge is required to recognize that imprisonment is *not* an appropriate means of promoting correction and rehabilitation." (Emphasis added).

In accordance with 18 U.S.C. 3661, *no limitation* shall be placed on the information concerning the background, character, and conduct of [the defendant] which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence (emphasis added). This includes as relevant to sentencing a variety of factors such as the

defendants age, educational and vocational skills, mental and emotional conditions, drug or alcohol dependence, and lack of guidance as a youth.  *See* U.S.S.G. 5H1.  See also United States v. Nellum, 2005 WL 300073, 2005 U.S. Dist. LEXIS 1568 (N.D. Ind. Feb. 3, 2005) (Simon, J.) (taking into account fact that defendant, who was 57 at sentencing, would upon his release from prison have a very low likelihood of recidivism since recidivism reduces with age; citing Report of the U.S. Sentencing Commission, Measuring Recidivism: the Criminal History Computation of the Federal Sentencing Guidelines, May 2004); United States v. Naylor, __ F. Supp. 2d __, 2005 WL 525409, *2, 2005 U.S. Dist. LEXIS 3418 (W.D. Va. Mar. 7, 2005) (Jones, J.) (concluding that sentence below career offender guideline range was reasonable in part because of defendants youth when he committed his predicate offenses he was 17 and noting that in Roper v. Simmons, 125 S. Ct. 1183, 1194-96 (2005), the Supreme Court found significant differences in moral responsibility for crime between adults and juveniles).

The directives of Booker and 3553(a) make clear that courts may no longer uncritically apply the guidelines.  Such an approach would be inconsistent with the holdings of the merits majority in Booker, rejecting mandatory guideline sentences based on judicial fact-finding, and the remedial majority in Booker, directing courts to consider all of the 3353(a) factors, many of which the guidelines either reject or ignore.  United States v. Ranum, 353 F. Supp. 2d 984, 985-86 (E.D. Wisc. Jan. 19, 2005) (Adelman, J.).  As another district court judge has correctly observed, any approach which automatically gives heavyweight to the guideline range comes perilously close to the mandatory regime found to be constitutionally infirm in Booker. United States v. Jaber, __ F. Supp. 2d __, 2005 WL 605787 *4 (D. Mass. March 16, 2005) (Gertner, J.). See also United States v. Ameline, 400 F.3d 646, 655-56 (9th Cir. Feb. 9, 2005) (advisory guideline range is only one of many factors that a sentencing judge must consider in determining

an appropriate individualized sentence), hrg en banc granted, 401 F.3d 1007 (9th Cir. 2005).

Justice Scalia explains the point well in his dissent from Bookers remedial holding:

> Thus, logic compels the conclusion that the sentencing judge, after considering the recited factors (including the guidelines), has full discretion, as full as what he possessed before the Act was passed, to sentence anywhere within the statutory range. If the majority thought otherwise if it thought the Guidelines not only had to be considered (as the amputated statute requires) but had generally to be followed its opinion would surely say so.

Booker, 125 S. Ct. at 791 (Scalia, J., dissenting in part).

Likewise, if the remedial majority thought the guidelines had to be given heavy weight, its opinion would have said so. The remedial majority clearly understood that giving any special weight to the guideline range relative to the other Section 3553(a) factors would violate the Sixth Amendment.

In sum, in every case, a sentencing court must now consider all of the 3553(a) factors, not just the guidelines, in determining a sentence that is sufficient but not greater than necessary to meet the goals of sentencing. And where the guidelines conflict with other sentencing factors set forth in 3553(a), these statutory sentencing factors should generally trump the guidelines. See United States v. Denardi, 892 F.2d 269, 276-77 (3d Cir. 1989) (Becker, J, concurring in part, dissenting in part) (arguing that since 3553(a) requires sentence be no greater than necessary to meet four purposes of sentencing, imposition of sentence greater than necessary to meet those purposes violates statute and is reversible, even if within guideline range).

**Discussion of the Guidelines in Gall**

The Sentencing Guidelines were again discussed by the Court in Gall v. United States, 128 S Ct. 586 (2007). In Gall, the Court set forth a number of important Principles. First, the Court made clear that the sentencing guidelines are advisory and that appellate review is limited to the issue of "reasonableness."

>As a result of our decision [in Booker], the Guidelines are now
>advisory, and appellate review of sentencing decisions is limited
>to determining whether they are "reasonable." Our explanation of
>"reasonableness" review in the Booker opinion made it pellucidity
>Clear that the familiar abuse of discretion standard of review now applies
>To appellate review of sentencing decisions. Id.

Second, it is equally clear that the sentencing judge must explain his or her reasons for departing from the guidelines:

>It is also clear that a district court judge must give serious consideration
>To the extent of any departure from the Guidelines and must explain his
>Conclusion that an unusually lenient or unusually harsh sentence is
>Appropriate in a particular case without sufficient justification. Id.

Third, the opinion placed certain restrictions to the extent of appellate review of a sentence outside the advisory guideline range, and specifically disapproved of certain criteria that had been utilized in Booker:

>In reviewing the reasonableness of a sentence outside the guidelines
>range, appellate courts may therefore take the degree of variance into
>account and consider the extent of a deviation from the Guidelines. We reject,
>however, an appellate rule that requires "extraordinary" circumstances to justify
>a sentence outside of the Guidelines range. We also reject the use of a rigid
>mathematical formula that uses the percentage of a departure as the standard
>for determining the strength of the justification required for a specific sentence.

Fourth, while the Court had permitted the circuit courts to adopt a presumption of reasonableness for sentences within the guidelines range, it did not follow that these courts could adopt a presumption of unreasonableness for sentences outside the range:

>As an initial matter, the approaches we reject come too close to creating
>an impermissible presumption of unreasonableness for sentences outside
>the Guidelines range….Even the Government has acknowledged that such
>a presumption would not be consistent with Booker.

Finally, the Court gave its reasons for its rejection of the "mathematical approach:"

>The mathematical approach also suffers from infirmities of application.
>On one side of the equation, deviations from the Guidelines range will
>always appear more extreme – in percentage terms – when the range is low,

>and a sentence of probation will always be a 100% departure regardless of whether the Guidelines range is 1 month or 100 years. Moreover, qualifying the variance as a certain percentage of a maximum, minimum, or median prison sentence recommended by the Guidelines gives no weight to the 'substantial restriction of freedom" involved in a term of supervised release or probation.
>
>More importantly, both the exceptional circumstances requirement and the rigid mathematical formulation reflect a practice – common among courts that have adopted "proportional review" – of applying a heightened standard of review to sentences outside the Guidelines range. This is inconsistent with the rule that the abuse of discretion standard of review applies to appellate review of all sentencing decisions – whether inside or outside the Guidelines range.

With its decision in Gall, the Supreme Court laid to rest any argument whatsoever that trial judges are required to impose sentences within the sentencing guidelines range. Sentencing Guidelines are merely advisory. Courts are to impose reasonable sentences consistent with the principles set forth in the sentencing guidelines. And appellate Courts are to review sentences using a reasonableness standard.

### **Application of the Statutory Sentencing Factors to the Facts of this Case**

In the present case, the following factors must be considered when determining what type and length of sentence is sufficient, but not greater than necessary, to satisfy the purposes of sentencing:

**1.     The Nature and Circumstances of the Offense and the History and Characteristics of the Offender**

    **(a)     The Nature and Characteristics of the Offense**

As the plea agreement makes clear, Mr. Diaz has accepted responsibility for the offense by entry of his plea.

**(b) History and Characteristics of Mr. Diaz**

Antonio is a 29-year-old African American male. He is of a limited education. He is incarcerated, but never really had much of an employment history. He has had little parental involvement in his young life and has relied on siblings for guidance and support.

**2.     The Need for the Sentence Imposed to Promote Certain Statutory Objectives**:

**(a)  To reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense**

The need for punishment is measured by the degree of "blameworthiness," which "is generally assessed according to two kinds of elements: the nature and seriousness of the harm caused or threatened by the crime, in particular, their degree of intent (mens rea), motives, role in the offense, and mental illness or other diminished capacity." Richard S. Frase, *Excessive Prison Sentences, Punishment Goals, and the Eighth Amendment: "Proportionality" Relative to What?,* 89 Minn. L. Rev. 571, 590 (February 2005).   The Guidelines include none of the factors bearing on Antonio's degree of culpability.

*(1) Mr. Diaz was motivated to financially help himself and his family*

A Defendant's motive is highly relevant at sentencing. *See Wisconsin v. Mitchell,* 508 U.S. 476, 485 (1993); *United States v. Mahan,* 2007 WL 1430288, at 3 (10th Cir. 2007) (sentence was procedurally unreasonable where district court refused to consider defendant's stated motive for possessing unloaded shotgun, i.e., that he had been violently beaten by three men and sought to defend his wife); *United States v. Milne,* 384 F. Supp. 2d 1309, 1310-1311 (E.D. Wis. 2005) (granting variance where "defendant did not take bank's money out of greed or desire to live a lavish lifestyle, [but in an effort] to keep a sinking business afloat"); *United States v. Ranum,* 353 F. Supp. 2d 984, 990 (E.D. Wis. 2005) (Defendant did "not act for personal gain or for improper personal gain of another").   While Diaz did act for personal gain, he primarily

acted to support his family and maintain basic financial obligations (keeping in mind that Diaz was provided enough monies to barely make ends meet).

Put another way, Mr. Diaz never sought to enrich himself as a result of the narcotics dealing (not in the manner which is portrayed "romantically" by movies for example). In fact, he made only a lower-class taxpayer income throughout all relevant times in question. This alone should weigh heavily on the Court as the Court looks to Mr. Diaz motive when determining if a departure sentence is warranted.

(2)     *His role in the offense*

The Defendant's role was minor compared to the other defendant's and the drug trafficking organizations overall goals. The Defendant's purported involvement (from the PSR) is as follows:

| | |
|---|---|
| Paragraph 18 -- | Conspiracy started approx June 14, 2019 – October 31, 2019 |
| Paragraph 19 – | McNeal source of supply for Spann, Diaz, Z. McNeal, Bacon, Corrales; Andujar supplied D. McNeal |
| Paragraph 22 – 0703 | D. McNeal was waiting on his ride (which was Diaz); McNeal had to get the cocaine (from mother's house); Met with CS/Agent, Diaz was driving; CS to pay later, to pay to Spann; Spann paid 2850.00 for this deal |
| Paragraph 23 -- 0806 | Diaz driving with D. McNeal; possessed bag with 50k |
| Paragraph 25 -- 0815 | Diaz driving; handed CS 3 oz of cocaine |
| Paragraph 43 – 1027 | alleges phone contact between Diaz and D. McNeal's GF, Aiesha Owens |
| Paragraph 47 | Accountable for 9 kilograms of cocaine |

Arguing for a minor or mitigating role aids in articulating Diaz role in the offense. For the Court to determine whether a Defendant is eligible for a mitigating role departure, the Court should look to two guiding principles:

1. The Defendant's role in the conduct for which he has been held accoutable at sentencing; and
2. His role compared to that of other participants in his relevant conduct.

See U.S. v. Quezada, 2007 WL 2274538 (11th Cir. 2007). Additionally, the Guidelines state the following (Application Notes 3C):

> In determining whether to apply subsection (a) or (b), or an intermediate adjustment, the court should consider the following non-exhaustive list of factors:
>
> (i) the degree to which the defendant understood the scope and structure of the criminal activity;
>
> The Defendant did understand the scope and structure of the criminal activity, based upon his admissions, motivations, and remorse
>
> (ii) the degree to which the defendant participated in planning or organizing the criminal activity;
>
> Diaz did not participate in planning or organizing the criminal activity, and Diaz did not supervise anyone. In fact, Diaz answered to McNeal, and there is no evidence Diaz operated independently or alone (ie., without McNeal's instructions).
>
> (iii) the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;
>
> Diaz did not exercise decision-making authority nor influenced the same, as he answered to McNeal as his "do-boy." In fact, Diaz answered to McNeal, and there is no evidence Diaz operated independently or alone (ie., without McNeal's instructions) or that Diaz influenced any decisions.
>
> (iv) the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts;
>
> The participation was three incidents. The direct involvement was one 3 ounce delivery, one 3 ounce delivery where he was the driver, and one transportation of monies. Diaz had no discretion in performing these acts and was ordered to do so by McNeal. In fact, Diaz answered to McNeal, and there is no evidence Diaz operated independently or alone (ie., without McNeal's instructions), nor is their evidence Diaz had discretion, or independent responsibility.
>
> (v) the degree to which the defendant stood to benefit from the criminal activity.
>
> Diaz benefit was minor compared to the conspiracy, and minor compared to the value of the narcotics, as he received help paying his personal bills.

Diaz role was minor, whether the Court reviews the same in regard to the Guidelines or

reviews his role based on this Courts knowledge of the other Defendants.

### (b) to afford adequate deterrence to criminal conduct

Research has consistently shown that while the certainty of being caught and punished has a deterrent effect, "increases in severity of punishments do not yield significant (if any) marginal deterrent effects." Michael Tonry, *Purposes and Functions of Sentencing,* 34 Crime & Just. 1, 28 (2006)" Three National Academy of Science panels… reached that conclusion, as has every major survey of evidence." *Id*.;  *See also* Zvi D. Gabbay, *Exploring the Limits of the Rerstrative Justice Paradigm: Restorative Justice and Sentence Severity: An Analysis of Recent Research (1999),* summary available at http://members.lycos.co.uk/lawnet/SENTENCE.PDF. The report, commissioned by the British Home Office, examined penalties in the United States as well as several European Countries. *Id*. at 1.  It examined the effects of changes to both the certainty and severity of punishment.  *Id.*  While significant correlations were found between the certainty of punishment and crime rates, the "correlations between sentence severity and crime rates…were not sufficient to achieve statistical significance." *Id*. at 2.  The report concluded that the "studies reviewed do not provide a basis for inferring that increasing the severity of sentences is capable of enhancing deterrent effects." *Id.* at 1.

### (c) to protect the public from further crimes of the defendant

Anonio Diaz has a low risk of recidivism. While initially, the rate is high due to his criminal history, when the Court analyzes other factors, such as Diaz age upon possible release from custody, the fact that he can receive education and training while in custody, and the fact Diaz will have some family support upon release, Diaz has a chance to succeed, not re-offend, and avoid future criminal issues.

3.  **The Kinds of Sentences Available**

In Booker, the Supreme Court severed and excised 18 U.S.C. 3553(b), the portion of the federal sentencing statute that made it mandatory for courts to sentence within a particular sentencing guidelines range. Booker, 125 S. Ct. at 756. This renders the sentencing guidelines advisory. Id. [Cite to 18 U.S.C. 3551, 3559, 3561, 3571, 3581 for the types of available sentences based upon defendant's conviction.]

Congress has directed the commission to "ensure that guidelines reflect the General appropriateness of imposing a sentence other than imprisonment in cases in which the defendant is a first offender who has not been convicted of a crime of violence or an otherwise serious offense," and the "general appropriateness of imposing a term of imprisonment on a person convicted of a crime of violence that results in serious bodily injury." 28 U.S.C. 994(j). Congress issued this directive in the belief that "sentencing decisions should be designed to ensure that prison resources are, first and foremost, reserved for those violent and serious criminal offenders who pose the most dangerous threat to society," and that "in cases of non-violent and non-serious offenders, the interests of society as a whole as well as individual victims of crime can continue to be served through the imposition of alternative sentences, such as restitution and community service." *See* Pub. L. No. 98-473, 239, 98 Stat. 1987, 2039 (1984)(set forth at 18 U.S.C. 3551 note). Mr. Diaz is clearly not a "violent and serious offender" who "pose[s] the most dangerous threat to society." He wishes to work, admitted his remorse and admitted his guilt by tendering his plea.

4.  **The Sentencing Range Established by the Sentencing Commission**

Mr. Diaz, in accord to the PSI, is a level 34, category criminal history VI. This gives Mr. Diaz a guidelines range of 262-327 months, followed by 5 years supervised release.

5. **The Need to Avoid Unwarranted Disparities**

The Court must consider the need to avoid unwarranted disparities among defendants with similar criminal histories convicted of similar criminal conduct. 18 U.S.C 3553(a)(6). The court should avoid unwarranted similarities in sentencing among defendants who are different in ways not accounted for in the guideline range, *See Gall v. United States,* 552 U.S. 38, 55 (2007)("need to avoid unwanted *similarities* among other co-conspirators who were not similarly situated"); *United States v. Ovid,* 2010 WL 3940724 (E.D.N.Y 2010)(sentencing two defendants with similar guideline ranges to 60 months and 126 months respectively based on distinctions in circumstances of the offenses and characteristics of the defendants), and unwarranted differences among defendants whose conduct and characteristics are similar. *See United States v. Parris,* 573 F. Supp. 2d 744, 753, 756-62 (E.D.N.Y. 2008).

The impact of the career offender provision will not go unnoticed, as Diaz, who was one of the least culpable, and who was an errand boy for McNeal, will receive one of the most largesse sentences in this case. The Court should impose a similar sentence to Diaz as McNeal receives in this case, or sentence Diaz to the ten-year minimum mandatory in this manner so there is parity in sentencing and no outrageous disparate impact.

4. **The Career Offender Provision**

The career offender provision of the sentencing guidelines, §4B1.1, more than doubles the sentencing range in Mr. Diaz's case. Without the career offender provision, Mr. Diaz's offense level would be 29, which coupled with the criminal history category VI, produces the range of 151 to 188 months. With the career offender classification, though, Mr. Diaz's offense level is thirty-four, which coupled with criminal history VI produces a range of 262 to 322 months.

Many courts have recognized that the wide net cast by the career offender provision

ensnares the street-level dealer along with drug king pins. See United States v. Moreland, 437 F.3d 424, 435 (4th Cir. 2006) ("[T]he career offender guideline covers a broad range of offenders, encompassing the street-level dealer who handles only small quantities of drugs and the drug king pin or the recidivist with a history of violence.")  In this instance, the same range applied to Mr. Diaz would apply to the individual with a far more serious record, whose trafficking was a calculated profit-seeking venture, who had a long history of violence or serious drug offenses, and whose instant offense involved far greater quantities of controlled substances.  Mr. Diaz's list of relatively minor offenses, which is consistent with the activity of a street-level dealer, his long-standing addiction that propelled him to sell crack cocaine to support his addiction, the absence of any weapons or violence in the instant offense and his past drug offenses, and the relatively small quantity of drugs involved in the instant offense all support a sentence less than the 22 to 27 years recommended by the career offender provision of the guidelines.

To be sure, Mr. Diaz acknowledges that in 28 U.S.C. §994 (h), Congress mandated that the Sentencing Commission "assure that certain 'career offenders' receive a sentence of imprisonment 'at or near the maximum term authorized.'" USSG. § 4B1.1, comment. (backg'd.).  He recognizes, too, that "Section 4B1.1 implements this directive, with the definition of a career offender tracking in large part their criteria set forth in 28 U.S.C. § 994(h)." USSG. § 4B1.1, comment. (backg'd.). See also United States v. Williams , 456 F.3d 1353, 1370 (11th Cir. 2007) ("Congress's goal was not simply to punish offenders with prior criminal histories more severely than first time offenders; Congress also wanted to target specific recidivism, particularly repeat drug offenders."). He recognizes, as well, that a district court lacks the authority to impose a below-guidelines sentence based upon its disagreement with congressional directives.  See United States v. Vazquez, 240 Fed. Appx. 318, 2007 WL 2050903, *5 (11th 2007) (unpublished).

In many instances, though, courts have thought it appropriate to impose sentences below the advisory range set forth by the career offender provision because of the circumstances of the particular case. Most notably, in United States v. Williams, 435 F.3d 1350, 1351 (11th Cir. 2006), the court imposed a 90-month sentence despite the career offender range of 188 to 235 months. Like Mr. Diaz's case, the transaction for which the defendant was being sentenced involved a relatively small quantity of crack cocaine (5 grams). Id. at 1352. Like Mr. Diaz's case, the guidelines range more than doubled the sentencing range, increasing the range from 84 to 105 months to 188 to 235 months. The district court found that the advisory sentence was greater than necessary to comply with the goals of sentencing largely because the defendant's two prior offenses were not especially serious offenses and because the career offender range "was unreasonable for a crime involving the sale of only $350 of crack cocaine." Id. at 1355.

In other cases, judges have found the classification of individuals as career offenders to be "an area that invites particular scrutiny post-Booker, when the guidelines including the career offender guidelines, are supposed to be advisory." United States v. Ennis, 468 F.Supp.2d 228, 234 (D. Mass 2006). In, for example, United States v. Fernandez, 436 F.Supp.2d 983, 988-989 (E.D. Wis. 2006), the district court cited a list of pre- and post-Booker cases recognizing that the career offender guideline sometimes calls for a sentence greater than is necessary to satisfy the purposes of sentencing.

Courts have, in pre- and post-Booker cases, recognized that the career offender guideline can produce a penalty greater than necessary to satisfy the purposes of sentencing. See, e.g., United States v. Mishoe, 241 F.3d 214, 220 (2d Cir. 2001)("In some circumstances, a large disparity [between the length of the prior sentences and the sentence produced by the guideline] might indicate that the career offender sentence provides a deterrent effect so in excess of what is required

. . . as to constitute a mitigating circumstance present 'to a degree' not adequately considered by the Commission."); United States v. Rivers, 50 F.3d 1126, 1131 (2d Cir. 1995)(stating that the district court can depart where the range created by the career offender provision overstates the seriousness of the defendant's record); United States v. Qualls, 373 F. Supp. 2d 873, 876-77 (E.D. Wis. 2005)(stating that in some cases the career offender guideline creates sentences far greater than necessary, such as where the qualifying offenses are designated crimes of violence but do not suggest a risk justifying such a sentence, or where the prior sentences were short, making the guideline range applicable to the instant offense a colossal increase); United States v. Serrano, No. 04-CR-414, 2005 U.S. Dist LEXIS 9782, at *22-25 (S.D.N.Y. May 19, 2005)(imposing non-guideline sentence where defendant's career offender predicates were minor drug offenses on which he served little time); No. 04-4003, United States v. Corber, 2005 U.S. Dist. LEXIS 8927, at *7-9 (D. Kan. Apr. 13, 2005), aff'd, 159 Fed. Appx. 54 (10th Cir. 2005)(finding that the career offender guideline created sentence greater than necessary, considering the nature of the predicate offenses and the instant offense); United States v. Phelps, 366 F. Supp. 2d 580, 590 (E.D. Tenn. 2005)(stating that "it is not unusual that the technical definitions of 'crime of violence' and 'controlled substance offense' operate to subject some defendants to not just substantial, but extraordinary increases in their advisory Guidelines ranges," which in some cases will be greater than necessary, especially where "the defendant's prior convictions are very old and he has demonstrated some ability to live for substantial periods crime free or in cases where the defendant barely qualifies as a career offender"); United States v. Carvajal, No. 04-CR-222, 2005 U.S. Dist. LEXIS 3076, at *15-16 (S.D.N.Y. Feb. 22, 2005)(finding that the career offender guideline produced a sentence greater than necessary under § 3553(a)).

In Fernandez, the court imposed a sentence of 126 months rather than the 188 to 235

months called for by the career offender provision. *Id.* at 991. Although the instant offense involved the sale of a significant quantity of powder cocaine, the court took note of the minor nature of the defendant's prior convictions, the length of time that had passed since the prior convictions, and that in the interim the defendant had no criminal history. *Id.* at 987.

In <u>United States v. Moreland</u>, the court of appeals concluded that "a two-thirds reduction from the bottom of the advisory guideline range" was excessive. 43 F.3d at 437. Nonetheless, the Court concluded "that a variance was warranted" and directed the district court to impose a sentence that was roughly one-third less than called for by the career offender provision. *Id*. at 436, 437. There were two circumstance central to the decision: "(1) the relatively small quantity of drugs involved in Moreland's current and prior offenses; [and] (2) the absence of firearms or violence from the offenses." *Id* at 420.

In <u>United States v. Williams</u>, 481 F.Supp.2d 1298 (M.D. Fla. 2007), on remand from the Court of Appeals decision at 456 F.3d 1353, the court imposed a sentence of 204 months rather than the 262 to 347 months called for by the career offender guidelines. *Id.* at 1305, 1303. In doing so, the court stated:

> In sum, Williams is a street-level dealer of crack cocaine. He is not a king pin, managing a large-scale drug enterprise. While the sale of crack cocaine is a serious offense, severity is a relative concept, and the guideline sentence of thirty years would be grossly disproportionate to the seriousness of the offense.

*Id.* at 1304. In <u>United States v. Gibson</u>, 442 F.Supp.2d 1279, 1285 (S.D. Fla. 2006), where the career offender guidelines advisory range was 360 months to life, the court imposed a sentence of 140 months. In doing so, the court relied upon the relatively small quantity of crack cocaine (22.6 grams) and the nature of the defendant's prior convictions, which largely "consisted of sales between one and three rocks of crack cocaine." *Id.* at 1284.

There are, of course, reasons for examining closely the career offender classification in particular cases. The Sentencing Commission has, for example, questioned whether the career offender guideline when applied to low-level drug sellers had any appreciable effect on the sales of drugs:

> The question for policymakers is whether the career offender guideline, especially as it applies to repeat drug traffickers, clearly promotes an important purpose of sentencing. Unlike repeat violent offenders, whose incapacitation may protect the public from additional crimes by the offender, criminologists and law enforcement officials testifying before the Commission have noted that retail-level drug traffickers are readily replaced by new drug sellers so long as the demand for a drug remains high. Incapacitating a low-level drug seller prevents little, if any, drug selling; the crime is simply committed by someone else.

U.S. Sentencing Commission, *Fifteen Years of Guideline Sentencing,* 134 (Nov. 2004).

Courts have also recognized that the application of the career offender guidelines can result in a sentence that fails to take into account the Guidelines concern for proportionality in sentencing:

> The Introduction to the Guidelines notes that a primary purpose of the Guidelines, and indeed, a significant purpose of all sentencing, is not just to avoid disparity in the sentencing of offenders, but also to ensure "proportionality in sentencing through a system that imposes appropriately different sentences for criminal conduct of different severity." U.S.S.G. § 1A1.1, Introductory cmt. (n.3). The drafters could have avoided disparity by sentencing all offenders to life imprisonment no matter what they did. But while that would have made sentencing uniform across the country, it would have been uniformly disproportionate, not to mention grotesquely unfair.
>
> In the instant case, Nicholson [who is a career offender] is facing 20 years for drug distribution, a sentence which matches the maximum punishment for the following offenses: Sexual abuse, 18 U.S.C. § 2242; sexual exploitation of children, 18 U.S.C. § 2251; enticement into slavery, 18 U.S.C. § 1583; terrorism, 18 U.S.C. § 2322; torture, 18 U.S.C. § 2340A; kidnapping, 18 U.S.C. § 1201; seditious conspiracy, 18 U.S.C. § 2384; and, biological weapons, 18 U.S.C. § 175c. Likewise, under the Guidelines, selling someone in the slave trade is "only" an offense level 22, U.S.S.G. § 2H4.1 and transmitting top secret national defense information is "just" a 29, U.S.S.G. § 2M3.3, while Nicholson's base offense level is 34.

United States v. Ennis, 468 F.Supp.2d at 236. Mr. Ellis's base offense level is, of course, 37. (PSR,

¶21).

Finally, the Sentencing Commission has also observed the disproportionate application of the career offender provisions to African-Americans:

> In 2000, there were 1,279 offenders subject to the career offender provisions, which resulted in some of the most severe penalties imposed under the guidelines. Although Black offenders constituted just 26 percent of the offenders sentenced under the guidelines in 2000, they were 58 percent of the offenders subject to the severe penalties required by the career offender guideline. Most of these offenders were subject to the guideline because of the inclusion of drug trafficking crimes in the criteria qualifying offenders for the guideline. (Interestingly, Hispanic offenders, while representing 39 percent of the criminal docket, represent just 17 percent of the offenders subject to the career offender guideline.) Commentators have noted the relative ease of detecting and prosecuting offenses that take place in open-air drug markets, which are most often found in impoverished minority neighborhoods (Tonry, 1995), which suggests that African-Americans have a higher risk of conviction for a drug trafficking crime than do similar White drug traffickers (Tonry, 1995; Blumstein, 2000).

U.S. Sentencing Commission, *Fifteen Years of Guideline Sentencing*, 133-34 (Nov. 2004).

## Conclusion

For the foregoing reasons, ANTONIO DIAZ, respectfully submits that a downward variance in this cause, and seeks an appropriate sentence that satisfies the need for punishment for the offense, but is not greater than necessary, to comply with the statutory directives set forth in 18 U.S.C. 3553(a).

Respectfully submitted,

*/S/ ALEX R. STAVROU*

_____

ALEX R. STAVROU, ESQUIRE
13046 Racetrack Road
#333
Tampa, Florida 33626
Phone:    813-251-1289x1
Fax :     813-489-2528
Fl Bar No.:  0108390
Alex@alexstavrou.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing Sentencing Memorandum was filed with the Clerk of the Court and was sent via ECM to the Assistant United States Attorney, Caleb Albritton, on this 22nd day of January, 2022.

*/S/ ALEX R. STAVROU*

_____
ALEX R. STAVROU, ESQUIRE
13046 Racetrack Road, #333
Tampa, Florida 33626
Phone:    813-251-1289x1
Fax :     813-489-2528
Fl Bar No.:  0108390
Alex@alexstavrou.com